## ORPHANS' COURT OF BALTIMORE CITY.

Filed July 21, 1899.

### IN THE MATTER OF THE ESTATE OF ALBERT GOTTSCHALK, DECEASED.

WRIGHT, NAAS and RIEHL, JJ.—

Albert Gottschalk, late deceased, by his last will and testament, duly admitted to probate, appointed his son, Joseph Gottschalk, and The Mercantile Trust and Deposit Company of Baltimore the executors of his said will. Both of them qualified and entered upon their duties as such executors on the 18th day of October, 1898. On the 19th day of January, 1899, they returned a partial inventory of the assets of the estate. On the 18th day of March, 1899, one of the executors, the said The Mercantile Trust and Deposit Company, filed in this Court its petition, asking to have the powers and authority of its co-executor (Joseph Gottschalk) revoked; alleging as the reasons therefor that the latter would not supply the information to make a more complete inventory, and that he had failed to furnish to the former certain statements and information concerning the estate and the business affairs of deceased, also charging, among other things, that it had not been allowed to see and examine the private books and accounts of the testator and in the possession of the respondent; that it also demanded of him but had never received a statement of all parcels of real estate belonging to the estate; likewise as to the collections and deposits made by him, and "that it is likely to suffer by the negligence or misconduct in the administration, improper use or misapplication of the assets of said estate by its said joint executor, Joseph Gottschalk."

The respondent, in his answer, denies all the charges of negligence and delay made in the petition, and avers that he "has never refused to furnish any information at his command," and has endeavored as rapidly as it was possible to obtain full particulars of the various enterprises in which his

father was engaged, and furnished the same from time to time as he could obtain it. "That being the son of deceased, who had been entrusted with absolute confidence by his father during the last years of his life, and being a co-executor with the petitioner, with equal powers and larger interests, as a legatee under the will, he did not recognize the rights of the petitioner to assume entire control of his father's estate and in treating him as its servant." That there was no extraordinary delay in returning the inventory, and avers his readiness to furnish all information in his power in regard to his father's estate.

Exceptions to the answer and answer to such exceptions have been filed, by which all elicited information has been furnished, and full answer made to the averments of the petition. Having thus in part briefly recited what is contained in the petition and answer, we see that the principal, if not the sole question to be here determined, is whether the respondent acted conformably to the requirements of his duty as one of the executors of his father's estate. The misconduct with which he is charged is not positive acts of misdoing, such as dishonesty by misappropriation or concealment of assets, and kindred wrongs, but mainly he is accused of procrastination, delay in returning the inventory, neglect and delay in furnishing to petitioner information of the state of affairs regarding the estate; so that it would appear that they are "sins of omission" rather than those of commission with which he stands charged, and by which petitioner feels it is "likely to suffer," and it is in respect to the duties of the respondent's trust, and whether he has properly discharged them that we are to inquire.

The respondent claims, and the proof bears out the claim, that for some years next preceding and at the time of decease of his father, Joseph Gottschalk was the trusted, confidential agent of the former, and as treasurer of the A. Gottschalk Company, in which the father was so largely interested and otherwise, he had the entire charge of the testator's business, and the decease of the latter found him in possession and control of the business, its books and accounts, and a portion of the assets of the estate. It appears from the evidence that about the first

thing which occurred to disturb the harmonious relations of these executors was when the respondent informed Mr. Gill, the president of the Mercantile Trust and Deposit Company (petitioner), that a sum of money belonging to the estate was deposited with the Fidelity and Deposit Company, where it was drawing three per cent. interest, and the president of the trust company asked that the deposit should be removed to his company, where, as it appears from the letter of the treasurer of the trust company to respondent, dated November 11th, 1898, two per cent. interest only was to be allowed upon the amount then to the credit of the executors on the books of said company, although later the trust company agreed to allow three per cent. interest, the same rate allowed by the Fidelity Company, the then depository of a part of the funds. In this letter it was proposed that a like deposit of the proceeds of life insurance policies, certain stock and all amounts received from the estate should be deposited with the petitioner's company and bear interest at two per cent. and it also asked for "all deeds and insurance policies." Later, about December 5th, 1898, in a conversation between Mr. Gill and the respondent, the former insisted that "all the accounts and books pertaining to the estate" should be brought to the office of the petitioner, and that all the business relating to the estate should "be transacted through its office."

The respondent seems to have regarded these demands as inordinate and arbitrary. He did not comply with them altogether, and this may be considered as the beginning of what has been termed the "strained relations" existing between the two executors. Then follows the correspondence between their counsel, which is filed as exhibits in the case, mainly looking, on the part of the petitioner, to securing the statements, accounts and lists of property, etc., previously called for, but resulting in leaving matters in substantially the same attitude as before, so far as the relations of the parties were concerned.

Has, then, the respondent acted remissly, or in violation of his duty, in failing to comply with all the requests or demands of petitioner in this matter? It is, undoubtedly, greatly to be desired, as well as being for the best

interests of the estate, that there should be harmony of action and feeling on the part of the executors, since in law they are regarded as one person, though in many matters the separate act of each is the act of all, and binds the estate; still they have a joint authority over the whole property of the estate. Schooler's Executors and Administrators, Sec. 400; Hinkley's Testamentary Law, Sec. 1129, and authorities there cited.

Neither one, to the exclusion of the other, is entitled to the possession of the same, and this principle applied to the case before us, would mean that neither executor to the exclusion of the other, would be entitled to demand or take possession of the deeds, policies of insurance, books and accounts, but both and each are equally entitled to them, and to have access to them, and to all other sources of information which are at the command of either, at all proper and reasonable times, and with due regard to the individual rights of each. Schooler's Executors and Administrators, Sec. 401; 2 Williams' Executors (7 Am. Ed.), 142 and 152, note.

It is very doubtful, we think, if the requirement (legally) is upon the respondent to furnish statements, balance sheets, etc., to his co-executor, and much less to deliver to the petitioner the sole manual possession of the books, deeds, securities and property called for, though the latter should be offered equal facilities and access to examine the same. "Each has power to take possession of the assets, which neither of the others can hinder, and that, having taken possession, neither of the others can take them from him.

2 Woerner's Am. Law of Administration, 739.

Williams vs. Maitland, 1 Iredell Eq. R. 106.

Douglass vs. Satterlee, 11 Johns 21.

Burt vs. Burt, 41 N. York 51.

The case last cited (Burt vs. Burt), was very similar to the one before us. Two brothers were joint executors of their father's will. The tin box in which the securities were kept by the testator was taken by the defendant and placed in a safe, and he refused his co-executor's repeated demand for for its possession, though consenting that he might examine its contents, and the Court, in rendering its deci-

sion, says: "The plaintiff had undoubtedly on general principles an equal right with the defendant to the manual custody of the securities," and "that the defendant had not manifested a becoming spirit, but the dispute as to which should have that manual custody seems to me quite unimportant; so long as they were safe in the hands of a responsible executor, with his consent to their inspection by the other when any exigency or any convenience to the estate required it, there was no ground for application to any Court, certainly not because one brother did not treat the other with due fraternal regard and yield to his wishes;" (pp. 49 and 50). "Both of the executors could not have actual manual keeping of this box of securities, each in his own possession. The defendant had the actual possesion in the first instance without objection. He had as much right to retain that possession as the plaintiff had to demand it.

The claim that the plaintiff was entitled to take the possession because he was co-executor *ex vi termini*, admits that the defendant would have been immediately, entitled to take it again. The defendant being properly in possession, all that the plaintiff had any just reason for requiring was that when any step in the settlement or administration of the estate was to be taken which required the presence of the box or its contents or any part thereof, they should be produced. No refusal to produce for any such purpose is shown." (p. 51.) It seems so appropriate that we are inclined to adopt the language quoted as alike applicable to and decisive of the facts and the law in this case, so far as the demands and requests of the petitioner for the delivery to it of that portion of the estate in the hands and control of the respondent. If these demands of the petitioner could be legally enforced, then with the same propriety and with equal right could the respondent require the Mercantile Trust and Deposit Company, which has the custody of a large part of the securities belonging to the estate, to deliver the same over to him. Our view is that it makes no difference which of the executors keeps possession of the property of the estate, so long as it is safely kept and the other afforded an opportunity to see or inspect it

when necessary, and we understand that there is no claim that that portion of the estate in the possession of the respondent is not safely kept by him or that its safety will be endangered by its remaining with him.

At the hearing, some stress was placed upon the petitioner's request and the respondent's refusal to allow an expert to examine the books of the Gottschalk Company. Two such requests were made, neither of which, however, were made directly to the respondent as executor. The first was by a letter from Mr. McHenry, treasurer of The Mercantile Trust and Deposit Company, to Mr. Bacharach, one of the appraisers of this Court, dated May 11th, 1899, directing him to employ for that purpose "the services of an expert accountant, to be approved by (it) us," and which the respondent, acting upon the advice of counsel, thought improper to allow. Later, by letter, dated May 29th, 1899, the Trust Company made the second request to send an expert, and addressed it to the "Acting President of the Gottschalk Co." Thus, it appears that the first request was not made until May 11th, 1899, long after the commencement of this proceeding for the removal of the respondent from his executorship. Such refusal, therefore, was in no sense the cause of this suit being instituted, and the uncontradicted evidence in the case is, that at no other time has the petitioner or any of its officers asked for or been denied an opportunity to inspect the books and accounts, or to investigate the affairs of the deceased, and it is claimed by the respondent that free access and full opportunity would have been accorded the petitioner for that purpose, had it applied.

We are of the opinion, also, that the respondent is blameless in taking the position he did, under the circumstances, in not assenting to the transfer of the money from the Fidelity and Deposit Company, as it would have resulted in a loss to the estate in the difference of the rate of interest which the petition first proposed to allow, and though afterwards the same rate (3 per cent.) was offered by the petitioner, we can well understand that the offer, coming when it did, failed to make that favorable impression upon the respondent it earlier might have done, and possibly furnished ground for the final disagreement of these two executors.

Section 241 of Article 93, Code Public General Laws, upon which this proceeding is founded, says that "whenever any joint administrator or executor shall apprehend that he is likely to suffer by the negligence or misconduct in the administration, improper use or misapplication of the assets of the estate by any executor or administrator, he shall make complaint to the Orphans' Court, and if the same shall be adjudged well founded, the Court shall have authority in their discretion to revoke the powers and authority of the executor or administrator so complained of." And the petition sets out in language of this section that it is "likely to suffer by the negligence or misconduct in the administration, improper use or misapplication of the assets of the estate" by this respondent. The only evidence submitted in the case was the testimony given by the witnesses of the petitioner, and if therefore denied an opportunity to investigate the affairs of the Gottschalk Company and other matters as claimed by the petitioner, it has been gratified to same extent in the hearing of this case by an examination of some of the officers or employees of the company, and such of the books as were asked for, by and from all of which, with the other evidence in the case, we have been unable to discover anything which discloses any likelihood that the petitioner will suffer from any of the causes and dangers mentioned in its complaint. In fact, at the hearing, as we understood, the latter's counsel expressly disclaimed impugning the integrity of Joseph Gottschalk, concedes that he has been guilty of no flagrant or actual "misconduct, improper use or misapplication of the assets of the estate," but only that he has been "obstinately persistent," by which we understand counsel to refer to his failure to furnish the information, statements, etc., and his failure to deliver certain assets before mentioned to the Mercantile Trust and Deposit Company, and, therefore, guilty of negligence that would render him "unsuitable" to administer the estate. But the testimony incontestably shows otherwise, we think, that the balance sheet, statements and accounts "were made up as soon as possible," "three bookkeepers were employed, working as hard as

they could to make up the accounts," so Mr. Becker testifies.

Mr. Bacharach, the Court appraiser, who called at the company's office for data to make an inventory of the Gottschalk Company's stock, testifies that he, too, was informed that the "three bookkeepers were at work, and as soon as they got the data, they would furnish it."

We may add, that since this proceeding has been pending, two additional inventories have been returned, and most, if not all, of the statements, accounts and information heretofore required, have been furnished.

It is possible that the respondent has not made as rapid progress in the collections, in ascertaining the state and condition of the affairs of the estate as could be desired. He claims, however, to have diligently exerted himself to do so, and the evidence in the case, as heretofore stated, would seem to confirm the claim, and remembering the extensive business of the decedent, and the magnitude of the estate, involving correspondence with and visits to parties at distant points, making it apparent that considerable time was required, we are not prepared to say that this respondent has not been diligent in the management of the estate. He is personally largely interested in the estate, which fact alone would ordinarily be deemed an incentive for its prudent, diligent and proper administration, and no dishonesty of purpose is claimed or proven. The widow and all the children of the testator, save one, and who are legatees under the will, have petitioned the Court, asking for the retention of this respondent in the administration. It manifests their confidence in him—in his honesty and capacity as a representative—and while not of itself controlling, it is a fact not to be disregarded by the Court.

But independent of this, even, upon a review of all the facts of the case, while fully realizing the difficulty attending the administration of this estate by joint executors who are not now in accord, we think they should from this time forth endeavor to be in accord and see no reason why they should be otherwise, and that without sacrifice of principle or self respect, since we believe this entire controversy has solely grown out of the differing views of the two executors as to their respective rights. Undoubtedly, the respondent felt that there was a disposition on the part of his co-executor to ignore his equal rights in the administration, and he resented it, but with no intention that this resentment should work any hindrance or delay in the settlement of the estate. He did not acceed to the petitioner's entire demand, for what might appear and evidently did so appear to him to be the major supervision and control of the estate. Had he acquiesced it would probably have made their relations more agreeable, and though some embarrassment and unpleasantness has resulted in the conduct of the joint administration, which ought, and we trust will not, longer continue, since no real cause for it exists, when each shall properly ascertain the boundary of his right and keeps within it, as we are confident each (being actuated by an honest purpose) will be disposed to do, we are satisfied the estate is in no danger from the continuance of the respondent in his office.

We have been unable to come to the conclusion that by reason of negligence or otherwise, he is an unsuitable person to remain in the administration of the estate. We are of the opinion that the complaint in this case "is not well founded," and that we would not be warranted in revoking "the powers and authority" of the respondent, the executor complained of. It is therefore, ordered that the petition be dismissed, and that the costs be paid by the estate.